IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

HAROLD F. LOVE                                            PLAINTIFF

v.                      NO. 5:03cv00360 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                   DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, Harold Love, seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits.[1] For the reasons that follow, the Court[2] **reverses** the Commissioner's decision and **remands** the case for further administrative proceedings.

I.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

II.

In his application documents and at the hearing before the ALJ, Plaintiff alleged

---

[1] By previous order (docket entry #5), this case was remanded for further administrative action upon a stipulated motion by the Commissioner pursuant to sentence 6 of 42 U.S.C. §§ 405(g) and 1383(c), due to inability to locate the file containing the ALJ's first decision on Plaintiff's claim, or the tape recording of the first administrative hearing.

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge (docket entry #3).

inability to work since January 1, 1995, due to multiple impairments, including post-traumatic stress disorder, constant headaches and stomach pain, a hiatal hernia, seizures, gastrointestinal problems, skin cancer, depression and anxiety. (Tr. 44-48, 50-51, 57, 124, 130, 141.)  Plaintiff was born on December 2, 1948, making him fifty-three years old at the time of the hearing in July 2002, and he has a GED.  (Tr. 40, 124.)  He is a Vietnam Era combat veteran,[3] has past work as an interstate truckdriver, a custodian, and a gas mask tester, and last worked in March 1995.  (Tr. 41-44, 51, 131.)

Under the applicable law, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The regulations provide a five-step sequential process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work.  *Id.*  In evaluating a mental impairment, the ALJ must also rate the degree of a claimant's functional limitation in certain areas.  20 C.F.R. § 404.1520a.

Here, the ALJ first determined that Plaintiff was insured only through December 31, 2000, thus focusing her inquiry on the time period between the alleged onset date and that date.[4]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

---

[3] He served in the Army from December 1965 to December 1968.  (Tr. 167, 174.)

[4] The ALJ noted that Plaintiff was involved in a car accident in February 2002 and sustained serious physical injuries, which may result in a disabling condition.  However, she stated that she could not consider his current physical condition because his insured status expired in December

activity since his alleged onset date.  The ALJ next determined, at step two, that Plaintiff suffered from severe post-traumatic stress disorder (PTSD), but that he did not have an impairment or combination of impairments equaling a step-three listed impairment as contained in the regulations.  In doing so, the ALJ evaluated Plaintiff's mental impairment in accordance with § 404.1520a, finding slight limitations in his activities of daily living; some limitations in social functioning; no limitations in maintaining concentration, persistence and pace; and no actual episodes of deterioration or decompensation in work settings.  At step four, the ALJ found that Plaintiff was unable to perform his past relevant work, but retained the residual functional capacity (RFC), prior to the date last insured, to perform light work with only superficial interpersonal contact.  At step five, after taking testimony from a vocational expert and considering Plaintiff's age at the date last insured (closely approaching advanced age), education (high school equivalent), work experience and RFC, the ALJ found that there were a significant number of jobs in the national economy which Plaintiff could perform.  The ALJ thus concluded that Plaintiff was not disabled. (Tr. 15-22.)  Plaintiff pursued administrative review of this decision with no success, making the ALJ's decision the final decision of the Commissioner.  (Tr. 8-11.)

Plaintiff argues (docket entry #10): (1) that the ALJ failed to give sufficient weight to the 100% disability determination from the Veterans Administration (VA) and the VA treating physicians' opinions and observations and, instead, relied too heavily in the opinion of a one-time consulting physician; (2) that the ALJ failed to consider all of Plaintiff's impairments in combination; (3) that the hypothetical question posed to the vocational expert by the ALJ failed to reflect Plaintiff's limitations; (4) that the ALJ's credibility analysis improperly focused on pain, when Plaintiff's disabilities are based on mental symptoms, not physical ones; and (5) that the ALJ should have afforded greater

---

2000.  (Tr. 18.)  The medical records pertaining to his accident and subsequent medical care have been submitted here (Tr. 385-602), but not reviewed.

weight to the mental RFC assessments by two state agency medical consultants.

## III.

The submitted medical records indicate that Plaintiff sought mental health treatment from the VA's mental hygiene clinic as early as February 1996 (Tr. 183), and was seen there on a fairly regular basis through at least August 2001 (Tr. 342). (*See* Tr. 182-95, 209-323, 342-84.) During the relevant time period (*i.e.*, January 1, 1995, to December 31, 2000), he was repeatedly diagnosed with PTSD, depression and anxiety, and treated with medication and therapy for those conditions, in the VA mental health clinic by Joseph B. Pierce, M.D. (Tr. 212, 220, 222, 258, 307, 353, 365, 371), and Lola West, a licensed clinical social worker (Tr. 220, 226, 230-34, 237-39, 312-14, 317, 372-75). In February 1999 and January 2000, West prepared treatment plans, which were approved by Dr. Pierce, in which she identified two of Plaintiff's specific problems as "overreaction of hostility to insignificant irritants" and "extreme anxiety in social situations." (Tr. 222, 224-25, 372-75.) Plaintiff was also consistently assessed with PTSD, depression and anxiety by various primary care physicians and other medical and mental health professionals at the VA. (Tr. 182, 187, 194, 211, 212-13, 239, 244-45, 247-48, 296-97, 303-04, 309, 311, 316, 356, 364, 369.)

On May 22, 1997, he was evaluated and given a service-connected disability rating of 50% due to PTSD, effective June 12, 1996. (Tr. 318-22.) In February 1999, he was found entitled to a nonservice-connected pension because his disabilities "when considered in total are of sufficient severity to prevent [him] from pursuing employment." (Tr. 227-28.)

On September 25, 2000, Dr. Rex Cherry, a VA counseling psychologist, performed a vocational rehabilitation assessment, finding that Plaintiff was unemployable. (Tr. 156-59.) The three-page opinion details Plaintiff's educational, vocational, social and medical

background, and the results of testing performed to assess Plaintiff's interests, abilities and aptitude. Dr. Cherry concluded that Plaintiff had "impaired employability" which resulted in substantial part from his PTSD and found that he had a "serious employment handicap" due to "the serious nature of his condition, his poor job record,[5] his social limitations, need for continued psychiatric help, [and] history of homelessness."[6] (Tr. 159.) Dr. Cherry further found that Plaintiff was not feasible for vocational rehabilitation purposes due to his PTSD in that he was unable to tolerate working with people and would choose to escape by quitting jobs rather than dealing with confrontations in a mature/logical manner. (Tr. 156, 159.)

In May 2001, the VA found that Plaintiff was 100% disabled as of August 25, 1999, due to PTSD. (Tr. 164-76.) The VA's decision states that it was based on a physical examination and mental status examination on October 4, 2000 by Dr. Siegel (which is not a part of the record here), Dr. Cherry's rehabilitation assessment, VA outpatient treatment reports from 1988 to 2000, and a "development letter" dated September 15, 2000. The decision set out, in detail, the underlying evidence then stated that "[c]urrent clinical findings, physical examination, outpatient treatment reports and rehabilitation assessment, substantiate depression, social avoidance, family difficulties including divorce, death of a grandchild and unemployability based substantially upon his service connected PTSD." (Tr. 171.)

Plaintiff applied for Social Security disability benefits in July 1999. (Tr. 123.) On October 30, 2000, he underwent a consultative mental status evaluation at the request of the Social Security Administration. (Tr. 337-40.) Charles Spellmann, Ph.D., conducted a

---

[5]Plaintiff estimated that, following his discharge, he had had 50 to 60 jobs. (Tr. 157.)

[6]Various references in the record show Plaintiff's reports of being homeless, living with friends, or living in an old caboose on the river. (Tr. 157, 182-83, 320.) It appears that, during the relevant time period, he was living in a camper on property belonging to a friend. (Tr. 53-54, 66-67, 337, 353, 365.)

complete psychological battery, reporting that Plaintiff's profile on the Minnesota Multiphase Personality Inventory-II was invalid and that such a profile "might be the result of someone attempting to look bad, displaying much more psychopathology than one could reasonably expect." Dr. Spellmann believed that, due to Plaintiff's good reading ability, the profile was the result of "a fake, bad attitude." Dr. Spellmann stated that it was unclear why Plaintiff was not working, that he "apparently" had a PTSD diagnosis from the VA, that he denied being significantly depressed, and that he maintained a lifestyle that seemed to be satisfactory to him. (Tr. 338.) Dr. Spellmann concluded that Plaintiff had "unlimited" or "good" abilities in all areas of work-related mental functioning. (Tr. 339-40.)

In her decision denying benefits, the ALJ stated that Plaintiff had been diagnosed with PTSD at the VA mental health unit, and continued to be treated there "with medication and occasional therapy." (Tr. 16.) She also acknowledged that the VA had found Plaintiff unable to engage in gainful work activity but stated, "While consideration has been given to this determination, the finding of that agency is not determinative of the matter at issue here since the standards of disability for Social Security are not the same. Although the Veteran's Administration documents show that the claimant was unable to secure a substantially gainful occupation, objective findings do not support a finding of disability under the applicable provisions of the Social Security Act." The ALJ then noted Dr. Spellmann's conclusion that Plaintiff "had no marked difficulties in work related mental functioning." (Tr. 20.)

An ALJ is not bound by the disability rating of another agency when evaluating whether a claimant is disabled for purposes of social security benefits. 20 C.F.R. § 404.1504. However, the ALJ is required to consider and give some weight to the VA's finding of disability, as well as the medical evidence underlying the VA's disability decision. *Pelkey v. Barnhart*, 433 F.3d 575, 579-80 (8th Cir. 2006); *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). Here, the ALJ acknowledged the VA's disability determination and that

Plaintiff had been treated there, but failed to discuss in any detail the evidence underlying that decision or fully explain why she was disregarding it. The VA's medical records encompass over 160 pages. As stated above, Plaintiff was seen at the VA by numerous psychologists, physicians, and other medical professionals, none of whom are mentioned by the ALJ. He clearly was diagnosed with PTSD with related depression and anxiety, and that diagnosis is supported by the treatment notes, which contain many details provided by Plaintiff and observations of the medical personnel. Nor did the ALJ mention Dr. Cherry's assessment of Plaintiff's work-related abilities or explain why she was disregarding the specific findings he made.

It is the ALJ's job to weigh the relevant medical opinions and to resolve conflicts among the various treating and examining physicians. *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006). The ALJ is required to consider every medical opinion in the record. 20 C.F.R. § 404.1527(b). This includes statements about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what a claimant is capable of doing despite the impairment, and the resulting restrictions. *Id.* § 404.1527(a)(2). The amount of weight to be given each opinion is governed by a number of factors including the nature and extent of the treatment relationship, the degree to which the medical source supports his opinion with relevant evidence and explanations, the consistency of the opinion with the record as a whole, and whether the medical source is a specialist in the area at issue. *Id.* § 404.1527(d).

Furthermore, although the ALJ may not be bound by the VA's disability rating, the VA doctors were Plaintiff's only treating physicians. An ALJ is required to give controlling weight to the opinion of a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(d)(2).

The opinions and observations of Plaintiff's treating physicians, as well as those of

Dr. Cherry, a specialist who examined him and reviewed his underlying medical records, are consistent with the mental RFC assessment prepared by two state agency medical consultants: Kathryn Gale, M.D., on September 23, 1999 (Tr. 196-207), and Brad Williams, Ph.D. on July 3, 2000 (Tr. 324-34).  Drs. Gale and Williams both reviewed at least some of the VA records and found that Plaintiff was slightly limited in his activities of daily living; was moderately limited in social functioning; often suffered deficiencies in attention, concentration, persistence and pace; and had never had any episodes of decompensation or deterioration in a work setting.  They also both found that he had moderate difficulties maintaining concentration, maintaining a normal workday and workweek, accepting instruction and criticism, and setting realistic goals.  Dr. Gale also found that he was moderately limited in understanding and remembering detailed instructions, working with others, interacting with the public, getting along with his coworkers, and maintaining socially appropriate behavior.  *See* 20 C.F.R. § 404.1527(f)(2)(i)-(ii) (ALJ must consider findings of "highly qualified [state agency] physicians and psychologists who are also experts in Social Security disability evaluation")

In determining Plaintiff's RFC, the ALJ chose not to rely on the findings of Drs. Gale and Williams, and she did not mention any of the VA doctors or their specific findings regarding Plaintiff's mental symptoms or functional limitations.  Instead, she chose to rely on Dr. Spellmann's opinion that Plaintiff had no work-related limitations.  Generally, the opinion of a consulting physician who examines a claimant once does not constitute substantial evidence.  *Anderson v. Barnhart*, 344 F.3d 809, 812-13 (8th Cir. 2003).  This is especially true where, as here, the consulting physician did not review any of Plaintiff's medical records and his opinion is contradicted by other assessments that are supported by "better or more thorough medical evidence."  *See id.*  The Court agrees with Plaintiff's contention that, if Dr. Spellmann had reviewed Plaintiff's extensive VA records and Dr. Cherry's opinion, he may well have reached a different conclusion regarding Plaintiff's

work-related limitations.

The Court therefore finds that the ALJ's decision was deficient for failing to fully set forth her reasons for disagreeing with the VA's disability determination and the medical evidence underlying that determination, specifically the opinions of the VA treating medical sources and the VA consulting psychologist, Dr. Cherry.  If the ALJ still chooses to rely on Dr. Spellmann's opinion in assessing Plaintiff's work-related abilities, she should fully explain what other evidence in the record supports his conclusions and why such evidence should be afforded greater weight than the opinions of Dr. Cherry, Dr. Gale, Dr. Williams and the other VA medical evidence.

Although it appears that the ALJ properly considered Plaintiff's mental and physical impairments in combination (Tr. 16, 21), she should ensure on remand that she does this expressly.  *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (where ALJ found claimant did not have impairment or combination equaling listing-level impairment and referred to evidence as a whole, ALJ properly considered combined effect of impairments).

The ALJ's credibility analysis focused on Plaintiff's allegations of constant pain, and the Court finds substantial evidence to support that determination.  On remand, however, the ALJ should include a discussion of Plaintiff's subjective allegations regarding limitations in addition to pain.

If the ALJ again reaches the fifth step of the sequential evaluation, she should ensure that any hypothetical question adequately reflects all limitations that she finds supported by the record.  *See Lacroix*, 465 F.3d at 889 (hypothetical question should "capture the concrete consequences" of all impairments that the ALJ finds are substantially supported by the record as a whole).

IV.

IT IS THEREFORE ORDERED that the Commissioner's decision is **reversed** and

this matter is **remanded** to the Commissioner for further proceedings consistent with this opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

    IT IS SO ORDERED this 26th day of March, 2008.

                                                    UNITED STATES MAGISTRATE JUDGE